22-07/GMV/PLS
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiffs
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax



RECEIVED FEB 13 2007 U.S.D.C. S.D. N.Y. CASHIERS

Gina M. Venezia (GV 1551)
Pamela L. Schultz (PS 0335)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FANTER SHIPPING LTD. and
PRIAMOS MARITIME S.A.,

                Plaintiffs,

-against-

SHANGHAI LIXIN SHIPYARD,
                Defendant.
----------------------------------------------------------x

07 CV 331 (LAK)

**FIRST AMENDED
VERIFIED COMPLAINT**

      Plaintiffs, FANTER SHIPPING LTD. and PRIAMOS MARITIME S.A. (hereinafter collectively "Plaintiffs"), by their attorneys Freehill, Hogan & Mahar, LLP, as and for their First Amended Verified Complaint against the named Defendant SHANGHAI LIXIN SHIPYARD (hereinafter referred to as "Shanghai") allege upon information and belief as follows:

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for breach of a maritime contract for the repair of a vessel. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action

NYDOCS1/277936.1

arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all times relevant hereto, Plaintiff FANTER SHIPPING LTD. (hereinafter "Fanter") was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 1, Costakis Pantelides Avenue, CY-101, Nicosia, Cyrpus.

3. At all times relevant hereto, Plaintiff PRIAMOS MARITIME S.A. (hereinafter "Priamos") was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 72-74 Marathanos St., 16673 Panorama Voulas, Athens, Greece.

4. At all times relevant hereto, Defendant Shanghai was and still is a foreign business duly organized and existing under the laws of a foreign country with an address at 330 Dong Tang Road, Pudong, Shanghai, China.

5. Defendant Shanghai utilizes other entities as paying or funding agents for purposes of receiving, holding and/or transferring funds. The paying or funding agent includes, but is not limited to Leader Marine Trading (HK) Co. Ltd.

6. On or about August 18, 2006, Plaintiff Fanter, as owner of the M/V CARINA II, and Plaintiff Priamos, as manager of the M/V CARINA II, entered into a maritime contract with Defendant Shanghai for the repair of the M/V CARINA II. A true and correct copy of the contract is attached as Exhibit A.

7. The vessel was duly tendered to Shanghai under the contract to effect the repairs, and Shanghai commenced repairs to the M/V CARINA II. Under the terms of the contract, Shanghai had 18 good weather days within which to complete the repairs. The Payment Terms of the

contract required that 50% of the repair invoice would be paid to Shanghai before the vessel's departure and the balance would be cleared within 30 days after the vessel's sailing.

8. In breach of the terms of the contract, the repairs were not completed within the time specified in the contract, and the vessel remained in the yard for an additional 13 days.

9. In further breach of the terms of the contract, Shanghai wrongfully detained the vessel for a further eight days. Shanghai presented Work Done lists to Plaintiffs two days prior to the vessel's sailing. Plaintiffs refused to sign the Work Done Lists because they were not presented to Plaintiffs in a format that permitted them to verify that the work was done or the quality of the work performed. Additionally, the Work Done Lists contained items different from the repairs requested by Plaintiffs and/or repairs that were completed in an unsatisfactory manner. Plaintiffs suggested to sign the Work Done Lists "under protest of quantity and quality of works". Shanghai still refused to release the vessel.

10. Despite the errors and discrepancies in the Work Done Lists and the completion of unsatisfactory repairs, in further breach of the contract, Shanghai submitted a Final Invoice to Plaintiffs in the amount of $555,574.00 (which was later changed to reflect a total of $500,500.00). Shanghai refused to release the vessel unless the entire amount was paid to Shanghai and the Work Done Lists were signed without any remark or protest.

11. In order to release the vessel and to minimize damages to Plaintiffs, Plaintiffs paid the amount Shanghai asserted was due under the contract, without prejudice to Plaintiffs' rights to contest the amounts Shanghai asserted were owed. The vessel was then released.

12. As a result of Shanghai's breach of contract, Plaintiffs' losses and damages are as follows:

(i) Delay of 13 days while repairs continued at a stipulated rate of $6,000 per day, limited to 10% of the total invoice, for a total of $55,050.00;

(ii) Detention of 8 days at the time charter rate of $13,000 per day for a total of $104,000;

(iii) Bunker consumption during the 8 day detention period for a total of $6,210.00;

(iv) Payment to Shanghai for work not completed and/or completed unsatisfactorily in the amount of $177,308.00;

(v) Crew labor expenses in the amount of $21,590.00;

(vi) Survey expenses in the amount of $9,800.00; and

(vii) Technician expenses in the amount of $3,800.00;

for a total of $377,758.00.

13. Plaintiffs have fulfilled all obligations required of them under the contract.

14. The contract provides that it is to be governed by English law and all disputes between the parties are to be resolved by arbitration in Hong Kong, and the right to have the substantive aspects of this matter determined in arbitration is reserved. In order to commence the arbitration process, Plaintiffs appointed their arbitrator.

15. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable.

16. This action is brought to obtain jurisdiction over Shanghai and to obtain security in favor of Plaintiffs in respect to their claims for damages as outlined above in the total amount of $377,758.00.

17. This action is further brought to obtain security for any additional sums to cover Plaintiffs' actual attorney fees and costs incurred to date in pursuit of their claims against Shanghai in the amount of USD $10,000.00, and Plaintiffs' anticipated attorney fees and costs in pursuit of its claims against Shanghai estimated to be USD $100,000.00.

18. This action is further brought to obtain security for any additional sums to cover interest at a rate of 6% until the entry of judgment or an arbitration award in 2 years from filing estimated to be USD $46,530.96.

19. Plaintiffs estimate, as nearly as can be computed, the total amount of their claim which is sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiffs against Defendant thus totals $534,288.96.

### Relief Pursuant to Rule B

20. This action is brought to obtain security in favor of Plaintiffs in respect to their claims against Shanghai in aid of arbitration and for any additional sums to cover Plaintiffs' anticipated attorney fees and costs in the arbitration and interest as outlined above.

21. Upon information and belief, and after investigation, the Defendant identified in this action cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiffs are informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire

and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "ASSETS"), as may be held, received, or transferred in its own name or as may be held, received or transferred for its benefit, or as may be held, received, or transferred for the benefit of Defendant in the name of its paying or funding agent(s) Leader Marine Trading (HK) Co. Ltd., at, moving through banking institutions including but not limited to ABN Amro, Atlantic Bank of New York, American Express Bank, Bank of America, BNP Paribas, Citibank, Deutsche Bank, HSBC, HSBC USA Bank NA, Israel Discount Bank, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia Bank, and/or other institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

WHEREFORE, Plaintiffs pray:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant up to and including the sum of $534,288.96 may be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, or as may be held, received, or transferred for the benefit of Defendant in the name of its paying or funding

agent(s) Leader Marine Trading (HK) Co. Ltd. at, moving through, or within the possession, custody or control of banking institutions including but not limited to: ABN Amro, Atlantic Bank of New York, American Express Bank, Bank of America, BNP Paribas, Citibank, Deutsche Bank, HSBC, HSBC USA Bank NA, Israel Discount Bank, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia Bank, and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served; and

c.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
February 13, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs

By: _____
Gina M. Venezia (GV 1551)
Pamela Schultz (PS 0335)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

GINA M. VENEZIA, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiffs in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiffs are because the Plaintiffs are foreign entities, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
13th day of February 2007

_____
Notary Public

JOAN SORRENTINO
Notary Public, State of New York
No. 01SO6067227
Qualified in New York County
Commission Expires December 3, 2009

Project

# CONTRACT №
## m/v Carina II

This day of 18 August, 2006 in Shanghai, by and between Famter Shipping Co./ Priamos Maritime S.A. acting on behalf of the shipowner/shipmanager of m.v. " Carina II ", hereinafter called "Owner" and Shanghai Lixin Shipyard, hereinafter called " Contractor ", it was mutually agreed the following:

Repair period: 18 good weather days (including Saturday/Sunday), including 5 clear days for normal docking works excluding the items in unit price/unquoted in the repair specification by reasons, the time counting is at 0800hr on the second day after the main working items allocated to the yard on spot within 36 hrs after her arrival at the yard premises. ( same terms as for mv "EPIC")

The **date of completion of repairs.** All repair works and tests required by the Owner shall be completed, and all the defects and deficiencies in the items concerning the repair by the Contractor during the tests shall have been eliminated by the fixed date. The date of the completion of Services (works) under this Contract will be the date of completion of repairs, signed by the Owners.

**Penalty Clause:** USD6000.00 per day for additional days due to fault of the yard, limited to 10% of total invoice.

**Pricing:** The prices shall be applied according to the quotation made by the Contractor accepted and approved by the Owner before the vessel arrival and during the repair preiod, including email, fax etc.

**Work-done Acceptance List for finished works:** Owner has the obligation of checking and signing the papers as to this project before vessel's sailing from the Shipyard.

l

EXHIBIT
A

Invoicing: The draft bill and work-done Acceptance list for subject vessel repair should be submitted to the Owners representative 2(two) days before the vessel's departure, the final repair amount must be decided and confirmed by both parties before the vessel's departure from the Shipyard.

Payment Terms: 50% of the repair invoice value shall be paid to the yard before the vessel's departure; the balance shall be cleared within 30 calendar days after her sailing from the shipyard.

Force Majeure: On the occurrence of Force Majeure (referring to any event that its occurrence can not be foreseen and its occurrence and result can not be avoided or overcome, such as fire, earthquake, flood, typhoon, bad weather etc.), the Contractor shall notify the commission party and the working period shall be expanded accordingly. And the Contractor shall not be held liability for the losses and damages arising from Force Majeure, including the losses of delay and penalty.

Contractors Liability:
Contractor takes the responsibility of guarantee for works carried out by the Contractor, 6 (six) months for fixed parts and 3 (three) months for moving parts, subject to proper maintenance & operation by commission party. Guarantee period start from the date of ship's departure from the Contractors shipyard. After her departure from the yard, Owner has the right of claim/objection concerning the quality within the guarantee period and the Contractor shall undertake, free of charge, to repair/replace any such defective part of work or material, or rectify such workmanship, provided however the Owner shall prove that the defectiveness thereof existed at the time of completion of the work and is entirely due to Contractors negligence. The payment of the yard, however, should not be more than the amount of original cost charged by the yard for the specified item(s). In case of more than the original cost this shall be mutual negotiated/agreed.

Owners Liability
The Owner shall solely be responsible for any loss or damage arising or resulting from disregard or non-observance by the Owner

2

or the ship's crew of the provisions specified in the "General Safety and other Regulations at Shipyard" attached hereto or of the Contractors recommendation in respect of the ship's safe staying at shipyard. The Owner shall solely be responsible for any loss or damage arising or resulting from his failure to make such notification or disclosure to the Contractor as required by the aforementioned Regulations.

The Owner shall appoint and dispatch his authorized supervisor(s) with Power of Attorney issued by owning company of the ship with signature of its legal person and stamping at his expense to the places where the Contractor is to carry out the work, unless otherwise agreed by the Contractor in writing; the authorized supervisor(s) shall submit the Power of Attorney in original to the Contractor, and in case of any failure to do so, the supervisor(s) shall be deemed to have been duly authorized by the Owner.

Dispute Settlement and Governing Law
All disputes arising out of or in connection with this contract shall be submitted to the Hong Kong Arbitration Commission for arbitration in accordance with the existing arbitration rules of the commission. This contract shall be governed and construed by the English Law.

This contract is made in duplicate, and each party holds one. Each one is equally authentic.

For and on behalf of
Shanghai Lixin Shipyard

For and on behalf of
Fanter Shipping Co., Ltd/
Priamos Maritime S.A.

Place of signature: Shanghai Lixin Shipyard, P.R. China

3